IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LISA CORINNE CHAVEZ, | ) | Civil No.: 3:14-cv-01178-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

      Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Diana Andsager
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

FINDINGS & RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Lisa Corinne Chavez ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision should be reversed, and this case remanded for further proceedings.

## Procedural Background

Plaintiff filed applications for DIB and SSI in September 2009, alleging disability beginning June 1, 2007. Tr. 89, 243, 250. Plaintiff's claims were denied initially and on reconsideration, and a hearing was held before administrative law judge ("ALJ") S. Andrew Grace on August 2, 2012. Tr. 44-83. ALJ Grace, noting substance use disorder as a material contributing factor, found Plaintiff not disabled in his decision issued November 16, 2012. Tr. 20-33. That decision became the final decision of the Commissioner on May 21, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's decision.

## Background

Born in 1960, Plaintiff was 46 years old on the alleged onset date. Tr. 26, 89. Plaintiff graduated from high school and attended two years of college and earned an HVAC certificate in vocational school. Tr. 313. Plaintiff has past relevant work as a certified nursing assistant, and also as a certified medical technician. Tr. 26, 48. Plaintiff alleges disability due to major depressive disorder, post-traumatic stress disorder ("PTSD"), degenerative disc disease, bipolar disorder, and alcoholism. Pl.'s Br. 2; tr. 104, 312.

FINDINGS & RECOMMENDATION - 2

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

If the ALJ finds the claimant disabled, and there is medical evidence of a substance use disorder, the ALJ must determine if the substance use disorder is a contributing factor material to the determination of disability. See 20 C.F.R. § 423(d)(2)(C). Accordingly, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the substance use was discontinued. If the remaining limitations would not be disabling, the substance use disorder is considered a contributing factor material to the determination of disability, and as such, the claimant is not disabled under the Act. 20 C.F.R. §§ 404.1535, 416.935; see also Social Security Ruling ("SSR") 13-2p, 2013 WL 621536 (Feb. 20, 2013).

FINDINGS & RECOMMENDATION - 4

**The ALJ's Decision**

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2007, the alleged onset date.

At the second step, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, major depressive disorder, posttraumatic stress disorder ("PTSD"), and alcohol dependence." Tr. 23. The ALJ also noted the non-severe impairment of diabetes and hyperlipidemia. Tr. 24.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Id.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [L]ift and/or carry up to 50 pounds occasionally and 25 pounds
> frequently, stand and/or walk up to six hours in an eight hour
> workday, and sit up to six hours in an eight hour workday. The
> claimant cannot reach above shoulder level bilaterally. The
> claimant is limited to simple, routine, repetitive tasks with one to
> two step instructions. The claimant is limited to work in a low
> stress environment, which is defined as an environment requiring
> few decisions and few changes. The claimant is limited to
> occasional interaction with the public and she will be absent
> approximately two times per month.

Tr. 26.

At the fourth step of the disability analysis, the ALJ found Plaintiff unable to perform her past relevant work. Tr. 26. The ALJ next found Plaintiff was closely approaching advanced age, and her acquired job skills did not transfer to other occupations. Tr. 26-27. The ALJ further found that considering her age, education, work experience, RFC, and all of her impairments

including substance use disorders, Plaintiff was unable to perform any jobs existing in significant numbers in the national economy. Tr. 27.

Because the ALJ found medical evidence of substance abuse disorders, the ALJ continued to evaluate whether the substance abuse disorder was a contributing factor material to the determination of disability. Tr. 22, 27-28.

The ALJ found that if Plaintiff stopped her substance use, her remaining limitations would continue to cause more than a minimal impact on her ability to perform basic work activities, and therefore constituted severe impairment. Tr. 27-28.

Next, the ALJ found that if Plaintiff stopped her substance use, she would not have an impairment or combination of impairments that meets or medically equals a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 28.

The ALJ then assessed Plaintiff's RFC, assuming substance use had stopped. The ALJ found Plaintiff would retain the capacity to:

> [L]ift and/or carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday. The claimant could not reach above shoulder level bilaterally. The claimant would be limited to simple, routine, repetitive tasks with one to two step instructions. The claimant would be limited to work in a low stress environment, which is defined as an environment requiring few decisions and few changes. The claimant would be limited to occasional interaction with the public.

Tr. 28-29. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. 29.

FINDINGS & RECOMMENDATION - 6

Continuing, the ALJ found Plaintiff would not be able to perform her past relevant work even if she stopped her substance use. Tr. 32. However, the ALJ determined that, based on the testimony of the VE, there was a significant number of other jobs in the national economy which Plaintiff would be able to perform if she discontinued her substance use. Id.

Accordingly, the ALJ found Plaintiff's substance use disorder was a contributing factor material to the determination of disability because she would not be disabled if she stopped the substance use. As such, she was determined to be not disabled within the meaning of the Act. Tr. 33.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

**Discussion**

Plaintiff assigns the following errors to the ALJ's decision: (1) erroneously finding that substance use was a contributing factor material to the determination of disability; (2) improper rejection of her own testimony; (3) flawed evaluation of treating and examining physicians; (4) improper rejection of lay witness testimony; and (5) deficient hypothetical questions and erroneous identification of occupations at step five.

1. <u>Substance Use Materiality</u>

Plaintiff argues the ALJ erroneously found her substance use disorder was a contributing factor material to the determination of disability. As noted in the background discussion above, the ALJ found Plaintiff disabled under the Act, but because the record contained evidence of a substance use disorder, the ALJ re-evaluated the evidence and determined that if she stopped her substance use, Plaintiff would not be considered disabled under the Act. 20 C.F.R. § 423(d)(2)(C); tr. 22, 27, 33. The ALJ's ultimate decision hinged on a single limitation included in Plaintiff's RFC when she was using substances – "she will be absent approximately two times per month" – which the ALJ did not include in the RFC formulation assuming she was not using substances. <u>Compare</u> tr. 26 <u>with</u> tr. 28-29. The ALJ eliminated the absenteeism limitation because "there [wa]s insufficient evidence to show that the claimant's depression is disabling, absent the effects of alcohol, particularly because there have been so few periods of sobriety to determine precise limitations of mental illness alone." Tr. 30. Plaintiff argues the ALJ applied the incorrect legal standard in making the materiality determination.

In support, Plaintiff focuses on a portion of SSR 13-2p, which provides that substance use "is not material to the determination of disability . . . if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of non[-]disability" absent substance use. SSR 13-2p, 2013 WL 621536, at *9. Therefore, argues Plaintiff, because the record is "at most" ambiguous as to whether Plaintiff's co-occurring major depressive disorder and PTSD were still disabling when Plaintiff abstained from alcohol, the ALJ necessarily could not establish that her mental disorders would improve to the point of non-disability. Accordingly, Plaintiff maintains that the ALJ is compelled to find disability on the equivocal record. Pl.'s Br. 12-13; Pl.'s Reply 3-4.

The Commissioner provides several counter-arguments. First, the Commissioner contends the record is not ambiguous, and cites findings by the ALJ that Plaintiff "largely functioned normally . . . had adequate concentration and attention . . . was able to follow a three-step command . . . [and demonstrated] only a mild cognitive impairment" during a period of sobriety between August 2010 and June 2011. Def.'s Br. 2-3; see tr. 712-14. Further, Plaintiff was described as "alert, pleasant, self-motivated and cooperative," and reported "doing very well" after seven months of sobriety. Def.'s Br. 3; see tr. 719, 728, 798.

Plaintiff acknowledges the Commissioner's observations, but contends the medical experts were unable to establish whether Plaintiff's limitations would persist during periods of sobriety. For example, the ALJ observed that in September 2012, "Dr. Kaper noted he could not tell whether the claimant's persistent anxiety was secondary to PTSD or alcohol dependence, or whether alcohol use is the source of deficits in cognitive processing." Tr. 30, 1751-52. Dr. Goodale indicated in August 2010 that Plaintiff "has some mild cognitive impairment which may relate to her symptoms of depression and alcohol use. . . . [and] Her continual use of substances

FINDINGS & RECOMMENDATION - 9

and depressive symptoms will make it difficult for her [to obtain or sustain employment]." Tr. 714. Similarly, Dr. Marcel did not disentangle substance use disorder and depressive disorder symptoms in opining Plaintiff was unlikely to sustain employment. Tr. 806. Accordingly, argues Plaintiff, because the evidence is at best ambiguous regarding the limiting effects of her depressive disorder in the absence of alcohol use, the Commissioner failed to carry the burden of proof to establish her co-occurring depression would improve to the point of non-disability absent alcohol.

The Court is obliged to follow Ninth Circuit precedent, which has addressed the burden of proof in cases where medical evidence is ambiguous regarding the effects of impairments absent substance use. The court has held: "[w]e thus make explicit what was intimated by our earlier cases, that the claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007). In so holding, the Parra court explained that a medical expert stated "there was no way for me to know" whether the claimant's condition would improve absent alcohol. Id. at 749. Similar to the case at bar, the plaintiff in Parra argued that inconclusive testimony was sufficient to carry his burden of proof. Id. The court rejected Parra's contention, however, finding, "Parra bore the burden of proving that his alcoholism was not a contributing factor material to his . . . disability." Id. at 750. The court explained that Parra's interpretation was not persuasive because it contradicted the purpose of the statute regarding the material contribution of a substance abuse disorder. Id. Specifically, the court opined, "[a]n alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." Id. The Commissioner reiterates these arguments in the case at bar, and the Court agrees that a policy

allowing inconclusive evidence of materiality to carry Plaintiff's burden of proof essentially incentivizes continued substance use. See Def.'s Br. 3.

Plaintiff further argues that SSR 13-2p supersedes the holding in Parra. Pl.'s Reply 3-4. The argument fails for the following reasons. First, Ninth Circuit case law is binding on this Court; second, SSR's are statements the Commissioner uses to explain and clarify policies, and as such, do not carry the "full force" of law. Third, SSR 13-2p expressly states:

> "[t]he claimant has the burden of proving disability throughout the sequential evaluation process. Our only burden is limited to producing evidence that work the claimant can do exists in the national economy at step 5 . . . [w]hen we apply the steps . . . to determine whether the claimant would be disabled if he or she was not using drugs or alcohol, *it is our longstanding policy that the claimant continues to have the burden of proving disability throughout the DAA* [drug addiction and alcoholism] *materiality analysis*."

SSR 13-2p, at *4 (emphasis added). Finally, the Ninth Circuit and several courts in this district have determined the passage from SSR 13-2p cited by Plaintiff does not shift the burden of proof to the Commissioner. See, e.g., Garner v. Colvin, 626 Fed.Appx. 699, 701 (9th Cir. 2015) (unpublished opinion); Cothrell v. Colvin, No. 3:13-cv-00276-HA, available at 2016 WL 3436409, at *4 (D.Or. June 15, 2016) (unpublished opinion); Mustoe v. Colvin, No. 3:14-cv-00857-AC, available at 2015 WL 9487990, at *3 (D.Or. Nov. 15, 2015) (citing Parra, 481 F.3d at 748) (unpublished opinion); Hall v. Colvin, No. 3:14-cv-00277-SI, available at 2015 WL 882106, at *5 (D.Or. Mar. 2, 2015) (same) (unpublished opinion).

Based on the foregoing, the ALJ did not err in determining Plaintiff's substance use was a contributing factor material to the determination of non-disability. Parra, 481 F.3d at 748.

2. Plaintiff's Testimony

        The ALJ found Plaintiff's symptom allegations were less than fully credible insofar as

they were not consistent with the objective evidence, and also because she worked after the

alleged onset date. Tr. 30. The Ninth Circuit relies on a two-step process for evaluating the

credibility of a claimant's testimony about the severity and limiting effect of the stated

symptoms.[1] Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue,

503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant

has presented objective medical evidence of an underlying impairment which could reasonably

be expected to produce the pain or other symptoms alleged." Lingenfelter, 503 F.3d at 1036

(citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can

reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.

1996). An ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or]

other testimony that appears less than candid . . . ." Id. at 1284. However, a negative credibility

finding made solely because the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence" is legally insufficient. Robbins v. Soc. Sec.

---

[1] The Court notes that, although the two-step process remains operative, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's decision was issued before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass do not muster irrespective of which standard governs, the Court need not resolve this issue.

Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. See Batson, 359 F.3d at 1197.

The ALJ explained that "[a]lthough that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's activities have, at least at times, been somewhat greater than the claimant has generally reported." Id. In support of the ALJ's finding, the Commissioner contends that daily activities can form the basis of an adverse credibility finding when they contradict allegations of completely disabling impairment, citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues the Commissioner's reasoning is misplaced because Plaintiff did not allege she was so disabled as to preclude all activity. Pl.'s Br. 16. Rather, Plaintiff's position is that although she can perform some work-related activities, she is not able to perform them on a sustained, full-time basis. As the Ninth Circuit, in Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014), explained:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by [ALJs] in social security disability cases.

Id. (citation omitted). Although the ALJ did not specifically identify which of Plaintiff's activities were inconsistent with her allegations, the ALJ noted elsewhere that she was able to attend to personal hygiene, do household chores, and care for a cat. Tr. 24. Plaintiff also reported having trouble doing activities due to pain in her right arm, and that after waking, eating, and completing basic hygiene, she spent much of the day watching television, and then would clean

and grocery shop in the evening. Tr. 25. Based on that testimony, the ALJ made a finding of mild restriction in activities of daily living. Id.

However, nowhere in the ALJ's decision does he identify any work activities performed by Plaintiff that belie her allegations. Rather, the ALJ found Plaintiff's activities "have, at least at times, been somewhat greater than [she] reported." Tr. 30. As such, the ALJ's rationale stands in contrast to the applicable clear-and-convincing legal standard, which requires the ALJ establish something beyond specific-and-legitimate reasons to impugn a Plaintiff's allegations. Here, the ALJ not only failed to identify specific activities contradicting Plaintiff's allegations, but also failed to identify the allegations at issue. The Ninth Circuit has long held that it is not adequate for an ALJ to provide boilerplate rationales that "generally apply" to a claimant's testimony; rather, the ALJ must make specific findings relating to the daily activities and their transferability to work in order to make an adverse finding. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Although the Commissioner argues the ALJ's rationale was adequate because "[a]ctivities do not need to equate to a sustained job in order to qualify as evidence to discount limitations" (see Def.'s Br. 9), the argument lacks merit because there was no identification of the allegations the ALJ purported to discount. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (general findings insufficient to support negative credibility finding). The ALJ's stated rationale fails for lack of specificity, and therefore should not be upheld on review.

The ALJ also found Plaintiff not credible insofar as the objective medical evidence did not support her allegations of physical and mental impairment. In the Ninth Circuit, a negative credibility finding as to the severity of symptoms cannot be sustained when it is based solely upon purported inconsistency with the objective medical evidence. Lingenfelter, 504 F.3d at

1036 (quoting <u>Reddick</u>, 157 F.3d at 722). The ALJ indicated, "images in the record show mild to moderate degenerative changes in the cervical spine," which he found did not comport with Plaintiff's allegations of "disabling" back, shoulder, and neck pain. Tr. 30. The ALJ did not provide any other valid rationale for discrediting Plaintiff's physical symptom allegations, however, and therefore the singular finding is legally deficient. <u>Rollins</u>, 261 F.3d at 857; <u>Lingenfelter</u>, 504 F.3d at 1036.

Similarly, the ALJ found Plaintiff's allegations regarding her mental impairments were not fully credible. Tr. 30. The ALJ noted "insufficient evidence to show that the claimant's depression is disabling, absent the effects of alcohol, particularly because there have been so few periods of sobriety . . . ." <u>Id.</u> The legal standard for assessing the veracity of symptom allegations is not, however, whether there was sufficient evidence to show that a mental impairment was disabling. Rather, the ALJ may only reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so. <u>Smolen</u>, 80 F.3d at 1281.

The ALJ noted that some physicians of record expressed difficulty in determining whether Plaintiff's psychosocial symptoms were caused by substance use, even during periods where Plaintiff was allegedly sober. Tr. 30. However, such determinations are germane to the weight the ALJ should accord the physicians' medical opinions, not to Plaintiff's symptom allegations. In other words, whether the physicians are uncertain regarding the *cause* of Platiniff's alleged symptoms is an altogether different issue than whether Plaintiff's allegations about the *severity* of her symptoms are credible. Essentially, the ALJ's conclusion regarding the veracity of Plaintiff's mental symptom allegations amounts to no more than a finding the allegations were inconsistent with the objective evidence.

FINDINGS & RECOMMENDATION - 15

For example, the ALJ noted that during periods of alleged sobriety, Plaintiff did not require hospitalization and appeared to "generally maintain a normal level of functioning." Tr. 30. In support, the Commissioner argues that when sober, Plaintiff had adequate concentration and attention, and appeared "alert, pleasant, self-motivated and cooperative and stated she would like to work." Def.'s Br. 8. However, Plaintiff expressly contradicted this finding during the hearing, stating her depression was "actually kind of worse" during a stint of sobriety from August 2010 to June 2011. Tr. 64. Aside from purported inconsistency with the objective evidence, however, neither the ALJ nor the Commissioner provide any valid reason to find Plaintiff's statement not credible.

Thus, absent any other valid specific, clear, and convincing rationales, the ALJ's stated rationale alone is insufficient to uphold the credibility finding. Rollins, 261 F.3d at 857; Lingenfelter, 504 F.3d at 1036.

3. Medical Opinion Evidence

Plaintiff argues the ALJ failed to evaluate the medical opinion evidence of her treating physician and an examining physician. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another

physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

A. Dr. Marcel

Plaintiff contends the ALJ failed to properly weigh the medical opinion evidence of treating psychiatrist Leonard J. Marcel, M.D. In a letter dated June 26, 2008, Dr. Marcel wrote:

> [Plaintiff] has been under the care of Kaiser Permanente Mental Health and Addiction Medicine Departments since January 2004 for treatment of recurrent major depression and chronic alcoholism. During the years 2006 and 2007, she was unemployed and unemployable due to these conditions which required multiple hospitalizations and intensive outpatient treatment.

Tr. 806. As the Commissioner concedes, the ALJ erroneously failed to mention Dr. Marcel's medical opinion in his decision. See Def.'s Br. 6. Plaintiff argues the omission constitutes harmful error, contending the ALJ failed to give reasons for rejecting the "limitations" ascribed by Dr. Marcel, and further that Dr. Marcel's opinion "establishes that Plaintiff is/was 'disabled' for Social Security's purposes." Pl.'s Br. 14.

The Commissioner argues the error was harmless because the doctor's statement was not a "medical opinion" as defined in the Act. Def.'s Br. 6. In support, the Commissioner contrasts the SSA definition of a medical opinion,

> [S]tatements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), with non-medical opinions:

> A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled . . . . [w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2). Nowhere in Dr. Marcel's note does he indicate the severity of Plaintiff's impairments, specific symptoms, prognosis, or what Plaintiff is able to do despite her impairments as required under (a)(2). See id. Instead, Dr. Marcel's opinion is focused on prior employment and prospective employability, which is an issue reserved to the Commissioner. Id.

Nevertheless, an ALJ may not simply ignore potentially probative evidence in rendering a non-disability decision. Reddick, 157 F.3d at 725 (ALJ is not bound by physician's opinion on ultimate issue of disability but it cannot be ignored unless legally sufficient rationales are provided) (quoting Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)); see also SSR 98-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."). Thus, while the Court agrees Dr. Marcel's opinion concerned an issue reserved to the Commissioner, the ALJ was obligated to at least recognize the opinion and, if applicable, provide appropriate reasons to reject it. See SSR 98-5p (ALJ should apply applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d)). Had the ALJ properly considered Dr. Marcel's note, it may have lent credence to the testimony of Plaintiff and the lay witness, and similar opinions of other physicians of record, therefore affecting the ultimate outcome. Accordingly, the Court does not agree the error was necessarily harmless.

B. Dr. Murphy

Plaintiff further argues the ALJ did not adequately evaluate the medical opinion of consultative physician David Murphy, M.D. The doctor performed a one-time examination and

prepared a report date September 10, 2010, in which he opined Plaintiff was limited to lift/carry "20 pounds on the left hand only; no lift or carry using the right hand . . . limit gripping with the right hand to an occasional basis and fine manipulation of the right hand to occasional basis." Tr. 721. However, as a caveat, Dr. Murphy indicated, "[the] current physical limitations appear to be secondary to a recent right shoulder injury. The findings suggest a rotator cuff tear . . . her current physical limitations should diminish over time." Id. The ALJ accorded Dr. Murphy's opinion "little weight," because there was "no definitive diagnosis of a rotator cuff tear or diagnostic imaging to support this assertion, and little treatment for shoulder problems throughout the medical record." Tr. 30-31. The ALJ further stated, "[e]ven Dr. Murphy's evaluation notes the recent shoulder injury improving and limitations should diminish." Tr. 31.

Plaintiff contends that in rejecting Dr. Murphy's opinion, the ALJ erroneously disregarded various medical imaging and other records evincing shoulder pain and treatment. Pl.'s Br. 14-15. However, Dr. Murphy indicated Plaintiff's rotator cuff tear was due to a discrete injury occurring six weeks prior to the examination. Tr. 718. Thus, the records and imaging from 2008 identified by Plaintiff would not be relevant to any "recent" shoulder cuff tear. See Pl.'s Br. 14; tr. 478. Further, while Plaintiff highlights treatment records for neck pain and right arm weakness in January 2012, there is no indication that those injuries were related to a shoulder cuff injury as opposed to Plaintiff's degenerative cervical spine condition, which the ALJ identified at step two of the sequential evaluation process. See tr. 23, 932-45; Pl.'s Br. 14-15. Plaintiff also cites complaints of shoulder pain at a physician's visit in April 2012, but it appears the physician attributed Plaintiff's shoulder complaints to her cervical spine condition, as he did not list a shoulder problem aside from neck pain. Tr. 1626.

In any event, the ALJ accounted for reduced range of motion in the shoulder and neck in his RFC formulation, finding Plaintiff cannot "reach above shoulder level bilaterally." Tr. 28. Moreover, Plaintiff has not presented evidence that her alleged shoulder cuff injury is ongoing, lasted or was expected to last for more than 12 months, or is causing more limitation than contemplated by the RFC. As such, although Plaintiff provides an alternative interpretation of the evidence, the ALJ's rational interpretation, supported by specific records in the evidence, should be upheld. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ did not err in evaluating Dr. Murphy's opinion regarding Plaintiff's shoulder cuff allegations.

4. Lay Testimony

Plaintiff contends the ALJ did not provide legally sufficient reasons to disregard the lay testimony of her mother, Diane Gilbert. Lay testimony regarding a claimant's symptoms or how an impairment affects claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).

The ALJ found Ms. Gilbert's testimony was of little probative value because it was inconsistent with the objective medical record, based on self-interest, and based on Plaintiff's subjective complaints. Review of the record reveals that the ALJ's finding is supported by a scintilla of evidence in the record: although Ms. Gilbert indicated Plaintiff had limitations in squatting, bending, standing, walking, and kneeling, Dr. Murphy expressly indicated Plaintiff had no standing or walking limitations. Tr. 721.

However, Ms. Gilbert provided many other observations regarding Plaintiff's impairments and daily activities which are consistent with the medical evidence, including crying spells, inability to handle stress effectively, difficulty with social interactions and fear of others, some memory problems, needing reminders to attend to basic tasks, and confusion as a side-effect of Seroquel taken for depression. See tr. 331-38. It is undisputed on this record that Ms. Gilbert lives with Plaintiff and therefore presumably has extensive first-hand experience with Plaintiff's activities and limitations. See Nguyen, 100 F.3d at 1467; SSR 06-03p available at 2006 WL 2329939, at *6 (Aug. 9, 2006).

Ms. Gilbert's observations were also generally consistent with findings by Scott Kapel, Ph.D., who diagnosed major depressive disorder and alcoholism, noted concentration deficits, avoidance of others, hypervigilance and exaggerated startle response, and posttraumatic stress disorder ("PTSD"); Kim Goodale, Psy.D., who diagnosed major depressive disorder and alcoholism, noted memory deficits, and cognitive impairment; Dr. Marcel, who diagnosed major depression and alcoholism; and the state agency reviewing physicians, who noted limitations in activities of daily living, social functioning, understanding and memory, and concentration, persistence, and pace. See tr. 97, 99-100, 113-15, 713-14, 720-21, 806, 1746, 1752. Thus, considering the record as a whole, inconsistency with the medical evidence is not a germane reason to discredit Mr. Gilbert's testimony.

Further, although the ALJ found Ms. Gilbert's observations were predominantly based on Plaintiff's self-reports, he did not provide any support for the finding, aside from the purported inconsistency with the medical record. Although the Commissioner argues Ms. Gilbert's inability to articulate specific limitations and inconsistencies in her own report are grounds to discredit her testimony, the argument is not persuasive. See Def.'s Br. 11. It is not mutually

FINDINGS & RECOMMENDATION - 21

exclusive that Ms. Gilbert would observe Plaintiff's impairment affects her walking ability, but not know precisely how far she is able to walk without needing to stop and rest. See tr. 337. Similarly, it is not unreasonable that Ms. Gilbert would recognize that although Plaintiff apparently has difficulty paying attention, she could retain the ability to follow a simple recipe. Id. Indeed, Dr. Kaper, whom the ALJ accorded "great weight," expressly noted Plaintiff can follow "simpler recipes, and finds that she has to read and re-read the recipe in order to complete the meal." Tr. 1751. At the same time, Dr. Kaper found mild impairment in following simple instructions, and moderate difficulty in understanding, remembering, and carrying out complex instructions. Id.

Finally, the ALJ chose to accord Ms. Gilbert's testimony little weight because of her close relationship with Plaintiff, inferring a shared interest in procuring benefits. Tr. 30. The Commissioner argues that pursuant to Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), a close personal relationship and the possibility of undue influence of a desire to help Planitiff are valid reasons to disregard lay witness testimony. Def.'s Br. 10-11. However, the lay witness in Greger was found to have made statements inconsistent with Greger's presentation to physicians and his failure to participate in treatment. Greger, 464 F.3d at 968. Contrary to the Commissioner's assertion, the Greger court did not hold that the lay witness's personal and/or pecuniary interest *alone* was a sufficient reason germane to Ms. Gilbert to disregard her testimony. See Def.'s Br. 10-11.

As is often the case, close family and/or friends are often in the unique position to observe a claimant and provide probative testimony regarding how a claimant's limitations might affect their ability to work. 20 C.F.R. § 404.1513(d)(4); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). Accordingly, while a personal or pecuniary interest may be one factor in

assessing the credibility of lay witness, a familial relationship does not necessarily engender non-credible testimony. Thus, absent specific support in the record, the ALJ's rationale cannot simply rest on the existence of a close familial relationship and be said to be germane to the witness.

Based on all of the foregoing, the ALJ erred in rejecting the testimonial evidence of Ms. Gilbert.

5. Step Five Errors

Plaintiff argues the ALJ erred by failing to address all of Plaintiff's limitations when posing hypothetical questions to the VE during the administrative hearing. The RFC and corresponding hypothetical question at step five must include all of the limitations supported by the administrative record. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). The Commissioner contends questions to the VE were properly based on the ALJ's RFC, which was properly formulated according to the findings at steps one through four. However, because the ALJ's findings throughout the sequential evaluation process included legal error, the hypothetical questions were incomplete, and therefore of no evidentiary value. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

Plaintiff further contends the ALJ failed to establish Plaintiff could perform a significant number of jobs in the national economy because the occupations identified at step five were incompatible with the RFC. Specifically, Plaintiff argues that because the RFC included a limitation to jobs requiring no more than "one to two step instructions" (with few decisions and few changes), Plaintiff is precluded from performing the four occupations the ALJ identified at step five. Pl.'s Br. 10-11; Pl.'s Reply 1-2; see tr. 26, 28-29. Based on the prior finding that the hypothetical questions were legally deficient, the Court does reach the question of whether the RFC comports to the occupations identified at step five. However, assuming *arguendo* the

FINDINGS & RECOMMENDATION - 23

hypothetical questions were otherwise valid, the ALJ nonetheless failed to identify appropriate occupations at step five.

In determining what occupations a claimant is able to perform, an ALJ relies on the Dictionary of Occupational Titles ("DOT"), which is the agency's primary source for information regarding various requirements for each listed occupation. 20 C.F.R. §§416.966(d)(1), 416.969; Terry v. Sullivan, 903 F.2d 1273, 1286 (9th Cir. 1990). One requisite the DOT includes is the General Educational Development ("GED") level, which describes the "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). The GED levels for "Reasoning Development" are organized on an ascending scale from Level 1 to Level 6. Id.

The first three GED Reasoning Development levels are defined as follows:

> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered with the job.
> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
> LEVEL 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Id.

Here, the ALJ identified four occupations, that, when not using substances, Plaintiff's RFC allowed her to perform: kitchen helper, linen room worker, mail room clerk, and office helper. Tr. 33. However, Plaintiff's RFC limits her to "simple, routine, repetitive tasks . . . . ." Tr. 28-29. Thus, as the Commissioner concedes, because the jobs of linen worker and mail room

clerk are classified as GED Level 3 Reasoning, Plaintiff's limitation to "simple, routine, repetitive tasks" precludes linen worker and mail room clerk. See Zavalin, 778 F.3d at 847 (joining Tenth Circuit in holding an "apparent" conflict between the RFC to perform simple, repetitive tasks and the demands of GED Level 3 Reasoning); Def.'s Br. 13.

Plaintiff further argues that her additional RFC limitation of "one or two step instructions" also precludes the occupations of kitchen helper and office helper, which require GED Level 2 Reasoning as defined by the DOT. Plaintiff contends that because Level 2 Reasoning requires "detailed but uninvolved written or oral instructions," it is necessarily more rigorous than Level 1, which requires the ability to "carry out one- or two-step instructions." Accordingly, argues Plaintiff, her limitation to carry out "one or two step instructions" precludes the more demanding reasoning development of GED Level 2 Reasoning occupations.

At the time the parties submitted their written arguments, the Ninth Circuit had not addressed this specific issue. However, in August 2015, the Ninth Circuit held that there is an apparent conflict between an RFC limitation of performing one- and two-step tasks and the requirements set forth for GED Level 2 Reasoning occupations. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) (holding that an RFC limitation to one to two-step tasks precluded Level 2 occupations requiring the ability to follow one- to two-step instructions). Here, as in Rounds, neither the ALJ nor VE addressed the apparent conflict between the RFC limiting Plaintiff to jobs with one- to two-step instructions and the demands of the Level 2 Reasoning. See id. at 1004. Accordingly, the ALJ's step five findings cannot be said to be supported by substantial evidence. Id.

Therefore, even if the Court were to find the step five questions to the VE were not insufficient because of the ALJ's erroneous RFC formulation, none of the occupations identified

at step five are valid pursuant to the Ninth Circuit's decision in <u>Rounds</u>. Accordingly, the ALJ's decision is not supported by substantial evidence and should be, therefore, reversed.

6. <u>Remand</u>

Plaintiff argues that this case be remanded for an award of benefits, or as a lesser alternative, further proceedings. When a court determines the Commissioner's ultimate disability decision includes legal error and/or is unsupported by substantial evidence, the court may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1099 (9th Cir. 2014). However, where it is clear from the record that an ALJ's error was "inconsequential" to the ultimate decision, the error is considered harmless and the decision must be upheld. <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1055-56 (9th Cir. 2006). Here, the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's symptom allegations, did not consider the medical opinion of Dr. Marcel, did not provide legally sufficient reasons to disregard the lay testimony of Ms. Gilbert, and committed further errors of law at step five. Because any of these errors may have affected the ultimate determination of non-disability, remand is appropriate.

In determining whether to remand for immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. <u>Garrison</u>, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious

doubt as to whether the claimant is, in fact, disabled[.]" Id. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir 2015) (citing Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

    As discussed at length above, the ALJ's RFC and hypothetical questions based thereon were premised on erroneous findings regarding Plaintiff's symptom testimony, observations of the lay witness, and apparently without considering the medical opinion of treating physician Dr. Marcel. The ALJ committed further error by failing to identify appropriate occupations in the national economy consistent with the (deficient) RFC.

    Although Plaintiff argues the case should be remanded for immediate payment of benefits, the record before the court requires further development in order to determine whether Plaintiff is, in fact, disabled under the Act. Accounting for the ALJ's errors, the record remains somewhat equivocal as to the specific limitations the testimonial evidence describes. Additionally, although the ALJ erroneously disregarded the medical opinion of Dr. Marcel, the ALJ did not err in evaluating the medical opinion of Dr. Murphy.

    Further, although the ALJ did not produce valid evidence of substantial numbers of appropriate jobs in the national economy, there were not questions (or answers) as to whether Plaintiff can perform other jobs in the national economy of the GED Level 1 Reasoning classification.

    Finally, because Plaintiff has a substance disorder diagnosis that has been adjudged as being a contributing factor material to the ultimate disability decision, serious doubt remains as

to whether Plaintiff would be considered disabled under the Act if she were to discontinue overuse of alcohol. <u>See</u> 42 U.S.C. § 423(d)(2)(C).

Thus, on this mixed record, the disability determination is not straightforward, even if the Court were to credit all of the discredited evidence as true. It is beyond the Court's purview to reevaluate and re-weigh the evidence, formulate a corresponding RFC, and attempt to establish whether Plaintiff can perform work, in order to determine whether Plaintiff is disabled. Further administrative proceedings are necessary.

## Conclusion

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the SSA for further proceedings.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due August <u>11</u>, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this <u>25th</u> day of July, 2016.

_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS & RECOMMENDATION - 28